# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**TERRI STANSBERRY,**
**Claimant Below, Petitioner**

**vs.)    No. 19-0250** (BOR Appeal No. 2053350)
(Claim No. 2018004569)

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Respondent**

**FILED**

June 26, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Terri Stansberry, by Counsel Robert L. Stultz, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Murray American Energy, Inc., by Counsel Aimee M. Stern and Denise D. Pentino, filed a timely response.

The issues on appeal are an additional compensable condition and medical benefits. The claims administrator denied a request for a cervical MRI on March 15, 2018. On March 16, 2018, it denied the addition of C6-7 disc displacement and left shoulder girdle sprain to the claim. The Office of Judges affirmed the March 15, 2018, decision and modified the March 16, 2018, decision to add left shoulder girdle strain to the claim.[1] The Order was affirmed by the Board of Review on February 22, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Stansberry, a coal miner, was injured in the course of her employment on August 22, 2017, while attempting to remove a piece of rock from a coal belt. She was unable to finish her

---

[1]The Office of Judges' Order also addressed November 17, 2017, and December 18, 2017, claims administrator decisions. These decisions were not raised on appeal and, therefore, will not be addressed. The addition of left girdle strain in the March 16, 2018, decision was also not raised on appeal and will not be addressed.

1

shift and was transported to Fairmont Regional Medical Center Emergency Room. The treatment note indicates Ms. Stansberry was seen for left shoulder pain. It was noted that she did a lot of overhead lifting at work. A left shoulder x-ray showed mild degenerative changes in the joint. She was diagnosed with bursitis and tendinitis. The Employee's and Physician's report of injury was completed at the hospital and indicates Ms. Stansberry injured her neck and shoulder on while removing a rock from a belt with a rake. The diagnoses were listed as cervical and thoracic strains. The claim was held compensable for thorax muscle and tendon strain as well as cervical ligament sprain.

Ms. Stansberry sought treatment from her primary care physician, John Manchin, D.O. He initially diagnosed left trapezius strain/strain. Ms. Stansberry reported that she felt fine prior to the accident but since the injury, she was unable to lay on her left side or perform her job duties. A cervical x-ray performed on August 28, 2017, showed mild degenerative changes in the cervical spine. Physical therapy was ordered. On September 8, 2017, Ms. Stansberry still had significant pain and range of motion limitations. It was noted that a cervical x-ray showed mild endplate degenerative changes from C4-C7. Dr. Manchin noted symptoms of cervical disc disease, arthritis, and degenerative joint disease on September 13, 2017. On September 20, 2017, Ms. Stansberry reported the new symptom of left arm numbness. Dr. Manchin requested a cervical MRI to check for herniated discs. The MRI was performed on September 26, 2017, and showed disc space disease from C4 to C7, with no disc herniations. A thoracic MRI showed multilevel degenerative changes and disc space bulging with no herniations.

An October 4, 2017, evaluation by Rebecca Cunningham, DPT, from Fairmont Rehabilitation Center indicates Ms. Stansberry was seen for strain of the muscle, fascia, and tendon of the neck as well as cervicalgia. She reported numbness and heaviness in her left arm. It was noted that a cervical MRI showed no disc herniations.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation in which he diagnosed cervical sprain on October 24, 2017. He noted that Ms. Stansberry was not currently working. Dr. Mukkamala determined that Ms. Stansberry had reached maximum medical improvement. However, he recommended an additional two weeks of physical therapy and stated that she could return to full duty work on November 6, 2017. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), he assessed 9% cervical spine impairment. Dr. Mukkamala then placed Ms. Stansberry in Cervical Category II and adjusted the rating to 8% impairment.

Ms. Stansberry was treated by Behrooz Tohidi, M.D., on February 2, 2018, for cervical pain that worsened with physical therapy. Dr. Tohidi reviewed the cervical MRI and found disc bulging at multiple levels with spondylolisthesis of C7 on T1 causing stenosis. He diagnosed cervical radiculopathy, cervical disc displacement at C6-7, and sprain of the left shoulder girdle. Dr. Tohidi ordered a repeat MRI and opined that Ms. Stansberry likely required surgery.

In a March 9, 2018, supplemental report, Dr. Mukkamala stated that he erroneously reviewed records from Fairmont Regional Medical Center which did not belong to Ms. Stansberry. He also noted that he erroneously indicated the claim was compensable for lumbar sprain when it

is not. However, Dr. Mukkamala stated that the opinions expressed in his October 24, 2017, independent medical evaluation were still valid. Dr. Mukkamala completed a second supplemental report on March 15, 2018. He stated that he had reviewed a recent report by Dr. Tohidi and his request for a diagnosis update and cervical MRI. Dr. Mukkamala opined that the diagnosis of cervical disc displacement was preexisting, degenerative, and not causally related to the compensable injury. Dr. Mukkamala opined that the compensable diagnoses had not changed and that the compensable injury had completely resolved. He stated that Ms. Stansberry's current pain complaints were the result of preexisting, noncompensable degenerative cervical spondyloses. He therefore saw no need for a repeat MRI and stated that any further treatment should be conducted under Ms. Stansberry's private healthcare.

The claims administrator denied Dr. Tohidi's request for a cervical MRI on March 15, 2018. On March 16, 2018, it denied the addition of C6-7 disc displacement sprain to the claim. In its September 7, 2018, Order, the Office of Judges affirmed the claims administrator's decisions. The Office of Judges noted that the compensable conditions in the claim are strain of muscle and tendon of the thorax and sprain of cervical ligaments. Dr. Mukkamala performed an independent medical evaluation of Ms. Stansberry and concluded that she had reached maximum medical improvement for the compensable conditions. In a supplemental report, Dr. Mukkamala noted that Dr. Tohidi requested the addition of C6-7 cervical disc displacement and left shoulder girdle sprain to the claim. Dr. Mukkamala opined that the cervical disc displacement preexisted the compensable injury and was the result of naturally occurring degenerative changes. He further opined that there was no clinical evidence of a left shoulder girdle sprain. The Office of Judges found that Ms. Stansberry was diagnosed with degenerative conditions for several years. A 2013 lumbar MRI showed degenerative arthritis and degenerative disc disease, a 2013 hip x-ray looked "bad for her age," and an April 17, 2017, left shoulder x-ray showed degenerative joint disease. The Office of Judges found that Dr. Manchin began treating Ms. Stansberry after her compensable injury occurred. He noted that a cervical x-ray showed degenerative changes and that she had symptoms of cervical disc disease, arthritis, and degenerative joint disease. The Office of Judges therefore concluded that the cervical disc displacement preexisted Ms. Stansberry's compensable injury and, therefore, should not be added to the claim.

Regarding the request for a repeat cervical MRI, the Office of Judges found that Dr. Tohidi indicated in his treatment notes that he had reviewed the September of 2017 cervical MRI. He requested an updated cervical MRI to evaluate Ms. Stansberry's disc bulge and stenosis. The Office of Judges concluded that cervical disc displacement is not a compensable condition in the claim, and the MRI was requested due to evaluate the progress of degenerative conditions rather than compensable conditions. Therefore, the Office of Judges concluded that the cervical MRI was properly denied. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 22, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-1, employees who receive injuries in the course of and as a result of their covered employment are entitled to benefits. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's*

*Compensation Commissioner*, 153 W.Va. 796, 172 S.E.2d 698 (1970). In this case, the medical evidence strongly indicates that Ms. Stansberry's cervical disc displacement is the result of degenerative changes that preexisted the compensable injury. A cervical x-ray taken shortly after the compensable injury occurred showed degenerative changes from C4-C7. Ms. Stansberry's treating physician, Dr. Manchin, noted symptoms of cervical disc disease, arthritis, and degenerative joint disease in September of 2017, and the MRI performed on September 26, 2017, showed disc space disease from C4 to C7, with no herniations. Lastly, Dr. Mukkamala determined in his independent medical evaluation that Ms. Stansberry's cervical disc problems long predated her compensable injury.

Pursuant to West Virginia Code § 23-4-1(a) (2019), workers' compensation benefits shall be provided to those employees who have received personal injuries in the course of and as a result of their covered employment. West Virginia Code § 23-4-3(a)(1) (2019) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. Because cervical disc displacement is not a compensable condition in the claim, the request for a cervical MRI was properly denied.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 26, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison